IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

BARBARA POUNCY,
    Plaintiff,

v.                                      Case No. 5:10cv184/MCR/CJK

MICHAEL J. ASTRUE,
Commissioner of Social Security,
    Defendant.
_____

REPORT AND RECOMMENDATION

    This case has been referred to the undersigned magistrate judge pursuant to the authority of 28 U.S.C. § 636(b) and Northern District of Florida Local Rules 72.1(A), 72.2(D), and 72.3, relating to review of administrative determinations under the Social Security Act ("Act") and related statutes, 42 U.S.C. § 401, *et seq*. The case is now before the court pursuant to 42 U.S.C. § 405(g), for review of a final determination of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-83.

    Upon review of the record before this court, the undersigned concludes that the findings of fact and determinations of the Commissioner are supported by substantial evidence. The decision of the Commissioner therefore should be affirmed.

PROCEDURAL HISTORY

    On November 15, 2004, plaintiff, Barbara Jean Pouncy, protectively filed an application for SSI benefits, alleging disability beginning November 13, 2004.

Plaintiff's applications were denied initially and on reconsideration. Following a hearing, the administrative law judge ("ALJ") issued a decision in which he found plaintiff "not disabled" at anytime since November 13, 2004. On May 7, 2010, the Appeals Council denied plaintiff's request for review. T. 5-7. The ALJ's decision thus stands as the final decision of the Commissioner and is now subject to review in this court pursuant to section 1383(c) of the Act. Plaintiff raises three issues:

1) The Commissioner's decision should be reversed, because the ALJ improperly rejected Ms. Pouncy's testimony concerning the effects and resulting limitations imposed by the combination of her medically determinable impairments.

2) The Commissioner's decision should be reversed because the ALJ failed to properly evaluate the effects and resulting limitations caused by the combination of Ms. Pouncy's many severe impairments as required by Eleventh Circuit law.

3) The Commissioner's decision should be reversed because the ALJ failed to pose a complete hypothetical question to the vocational expert.

### FINDINGS OF THE ALJ

In his written decision the ALJ made several findings relative to the issues raised in this appeal:

1) Plaintiff has not engaged in substantial gainful activity since November 15, 2004, the date of her application.

2) Plaintiff has the following severe impairments: hypertension; back pain; history of right leg pain; history of asthma; history of schizoaffective disorder; post-traumatic stress disorder; major depressive disorder; and antisocial personality disorder.

3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 416.920(d), 416.925 and 416.926).

4) Plaintiff has the residual functional capacity to sit/stand/walk up to 6 hours, each, in an 8-hour workday; lift 20 pounds occasionally and ten pounds frequently; and no manipulative limits. She cannot climb ladders, ropes, or scaffolds. She cannot work at unprotected heights or around dangerous machinery. Due to her emotional problems, she is limited to unskilled, entry-level work.

5) Plaintiff is not precluded from performing her past relevant work as a fast food worker and presser, based upon her residual functional capacity.

6) Considering the plaintiff's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that she can perform.

Accordingly, the ALJ found plaintiff has not been under a disability, as defined by the Act, since the date she filed her application. T.16-26.

## STANDARD OF REVIEW

"Review of the Commissioner's final decision is limited to determining whether the decision is supported by substantial evidence from the record and was a result of the application of proper legal standards." *Olds v. Astrue*, No. 5:09cv319/RS/EMT, 2011 WL 691595, at *1 (N.D. Fla. Jan. 19, 2011); *see also Carnes v. Sullivan*, 936 F.2d 1215, 1218 (11th Cir. 1991) ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). Substantial evidence is "'such relevant evidence as a reasonable person would accept as adequate

to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the Secretary[.]" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

The Social Security Act defines a disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).  To qualify as a disability, the physical or mental impairment must be so severe that the plaintiff is not only unable to do her previous work, "but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(1)(A).

Pursuant to 20 C.F.R. § 404.1520(a)-(g), the Commissioner analyzes a disability claim in five steps:

1. If the claimant is performing substantial gainful activity, she is not disabled.

2. If the claimant is not performing substantial gainful activity, her impairments must be severe before she can be found disabled.

3. If the claimant is not performing substantial gainful activity and she has severe impairments that have lasted or are expected to last for a continuous period of at least twelve months, and if her impairments meet or medically equal the criteria of any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, the claimant is presumed disabled without further inquiry.

4. If the claimant's impairments do not prevent her from doing her past relevant work, she is not disabled.

5. Even if the claimant's impairments prevent her from performing her past relevant work, if other work exists in significant numbers in the national economy that accommodates her residual functional capacity and vocational factors, she is not disabled.

Claimant bears the burden of establishing a severe impairment that keeps her from performing her past work. *See* 20 C.F.R. § 404.1512. "If the claimant establishes such an impairment, the burden shifts to the Commissioner at step five to show the existence of other jobs in the national economy which, given the claimant's impairments, the claimant can perform." *Olds*, 2011 WL 691595, at *2. "If the Commissioner carries this burden, the claimant must then prove [she] cannot perform the work suggested by the Commissioner." *Id*.

### FACTUAL BACKGROUND AND MEDICAL HISTORY[1]

Plaintiff alleged she became disabled on November 13, 2004, at age 43. She had a ninth-grade special education, and past work as a housekeeper, fast food cook, and laundry worker. T. 156-57, 168, 360. In disability reports, plaintiff alleged an inability to work due to emotional problems, leg and back pain, chest pain due to high blood pressure and asthma, and sickle cell anemia. T. 149, 343-46. Plaintiff had been incarcerated for the 14 months immediately before the alleged onset of disability. T. 16, 360.

---

[1] Although intended to be thorough, and to provide an overview of plaintiff's history of care and treatment, this synopsis of medical evidence will be supplemented as called for in the Analysis section.

Because plaintiff forfeited her previously awarded SSI benefits as a result of her incarceration, the most pertinent medical findings are those reflecting her condition at, or around, the time of her release from custody, November 13, 2004, which coincides with her alleged onset of disability. Nevertheless, the ALJ noted certain medical findings dating from before the earlier period of disability. A May 29, 1999, cervical x-ray showed spondylosis at C6-C7 on the left, quite pronounced. T. 397. Hospital records also revealed slightly displaced fractures of the left distal tibia and fibula dating from November 30, 2001. T. 402-405. These fractures were treated with closed reduction and application of a long leg cast.

In August 2003, while incarcerated, plaintiff underwent a diagnostic examination and evaluation conducted by psychiatrist Bruce Schoolcraft, D.O., who diagnosed plaintiff with schizoaffective disorder, mild depression, a history of knee replacement, hypertension, and asthma. T. 18, 362-64. Dr. Schoolcraft prescribed medication for depression and schizophrenia, and scheduled a reevaluation in one month. T. 364. The ALJ noted an absence of any record evidence to show plaintiff returned to Dr. Schoolcraft or any other mental health professional until January 31, 2005, upon a referral by State Disability Determinations Services. At that time, Dr. George Horvat, Ph.D., diagnosed post-traumatic stress disorder stemming from childhood abuse, major depressive disorder, recurrent, and ruled out antisocial personality disorder. T. 359-361.

Also in early 2005, plaintiff established care with the Calhoun County Health Department (CHD). On January 3, 2005, plaintiff first saw providers at CHD. T. 231, 232, 244, 245, 254, 255, 313. Plaintiff said she took blood pressure medication when she was incarcerated and had been without the medication since her release.

T. 254, 313. Plaintiff's blood pressure measured 150/102. Tr. 254. Dorcas Goodman, A.R.N.P, ordered laboratory tests and provided plaintiff with samples of Diovan, a blood pressure medication. T. 254, 313-14. On January 11, 2005, plaintiff returned to the CHD complaining of hypertension and asthma. T. 232, 244-45, 253, 312. Plaintiff said that she was supposed to be on cholesterol medication but was unable to afford it. T. 253, 312. Plaintiff was given Zocor, used to lower blood cholesterol, and advised to continue treatment with Diovan. T. 231, 244-45, 253, 312. Her blood pressure was recorded as 130/80. T. 312.

Also, during that time frame, plaintiff sought treatment at Jackson Hospital for headaches and low back pain. T. 309. She received medication and was instructed to follow up with her primary care doctor. Her blood pressure measured 128/88 at the time of the visit, January 16, 2005.

At the request of the Social Security Administration, Dr. Muhammed Naeem, an internist, performed a consultative examination. Dr. Naeem noted medical problems including severe depression, high blood pressure, chronic low back pain, and high cholesterol. He also noted a recent diagnosis of sickle-cell disease and a history of knee pain. T. 350-352. On examination, Dr. Naeem found an apparently normal back, without muscle spasm or tenderness. Plaintiff was able to walk without a limp, and able to sit, stand, and climb up and get down from the examination table without difficulty. T. 352. Dr. Naeem felt plaintiff was being properly taken care of by the CHD.

In January 2005, plaintiff underwent the aforementioned consultative psychological examination by Dr. Horvat. T. 359-361. Dr. Horvat found no impairment in attention, concentration, or memory. Plaintiff was cooperative, with

depressed mood and affect. She appeared of below average intelligence and capable of only simple decision making. The diagnosis included post-traumatic stress disorder, major depressive disorder, borderline intellectual function, and ruled out antisocial personality disorder. Dr. Horvat believed plaintiff would need close supervision, if she could be motivated to work.

Plaintiff received much of her care from the CHD, T. 231-262, and from the emergency room at Calhoun-Liberty Hospital. T. 177-229. Her complaints included high cholesterol, high blood pressure, and headaches. Plaintiff did not report to CHD from November 22, 2005, when she obtained samples of her cholesterol medication, until April 18, 2007. T. 248, 236-238. In April, her complaints included back pain, relieved somewhat with aspirin and Tylenol. She returned to CHD on May 29, 2007, seeking help with completing her food stamp form. T. 234. Returning to the emergency room on June, 21, 2007, plaintiff was provided with blood pressure medications and discharged. T. 185. On August 14, 2007, plaintiff presented at the emergency room saying she had been assaulted. T. 182. Examination revealed no bodily injury "anywhere," and no bruising or abrasion. The exam also was negative for back tenderness. T. 183.

## HEARING BEFORE THE ALJ

Plaintiff testified at her administrative hearing on September 11, 2007. T. 419-467. She recounted her past employment as a fast food cook, motel housekeeper, and laundry presser. Her last job was on the grill at Burger King during 2005. When asked by her lawyer why she couldn't work, plaintiff mentioned her blood pressure, her cholesterol, her intelligence level, her back, and her history of broken legs. T. 433. Her blood pressure was normal when she took her medication, which she had

with her on the day of the hearing. T. 435, 437. She felt her standing would be limited to 10 or 20 minutes, she could walk around the block, but couldn't lift more than maybe 10 pounds. T. 437. She often stays with friends, where she helps with dishes, but does no other house work. She spends most of her time "trying to figure out how to get me some money without laying on my back." T. 439.

Also appearing at the hearing was Paul Dolan, stipulated by plaintiff as a vocational expert. T. 447. The ALJ asked Mr. Dolan to consider plaintiff's age, her education, her past work experience, that in an eight-hour workday she could sit, stand, and walk up to six hours each, could lift 20 pounds occasionally, 10 pounds frequently, would not be able to climb any ladders, ropes, or scaffolds, could not work at unprotected heights or around machinery, had no manipulative limitations, and would be limited to unskilled, entry-level work.[2] T. 453. With those limitations, the hypothetical individual would be able to "go back to work as a fast food worker, as defined and performed, and as a presser, all around, as defined." T. 454. Such a person could also perform a number of other jobs readily available in the national economy. T. 454-455. With additional limitations of two hours standing, six hours sitting, and lifting up to ten pounds occasionally, Mr. Dolan identified two jobs present in significant numbers in the national economy. T. 456.

## ANALYSIS

Plaintiff first argues the ALJ erred by improperly rejecting her testimony concerning the effects and resulting limitations imposed by the combination of her medically determinable impairments. Under this point, plaintiff primarily takes issue

---

[2] The hypothetical comprises plaintiff's ultimately determined residual functional capacity. T. 20.

with the ALJ's determination that "claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible." This point necessarily invokes the familiar "pain standard" and it's eternal companion, the credibility of a disability claimant.

Under well-established controlling law, pain is treated, for purposes of the disability analysis, as a symptom of disability. Title 20 C.F.R. § 404.1529 provides in part that the Commissioner will not find disability based on symptoms, including pain alone, ". . . unless medical signs or findings show that there is a medical condition that could be reasonably expected to produce these symptoms." *Accord* 20 C.F.R. § 416.929. The Eleventh Circuit has articulated the three-part pain standard, sometimes referred to as the *Hand*[3] test, as follows:

> In order to establish a disability based on testimony of pain and other symptoms, the claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.

*Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); *Adamo v. Comm'r of Soc. Sec.,* 365 F. App'x 209, 214 (11th Cir. 2010) (quoting *Wilson*, 284 F.3d at 1225); *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1216 (11th Cir. 1991).

---

[3] *Hand v. Bowen*, 793 F.2d 275, 276 (11th Cir.1986) (the case originally adopting the three-part pain standard).

The Eleventh Circuit has also approved an ALJ's reference to and application of the standard set out in 20 C.F.R. § 404.1529, because that regulation "contains the same language regarding the subjective pain testimony that this court interpreted when initially establishing its three-part standard." *Wilson,* 284 F.3d at 1226. Thus, failure to cite to an Eleventh Circuit standard is not reversible error so long as the ALJ applies the appropriate regulation.

But "[w]hile both the Regulations and the *Hand* standard require objective medical evidence of a condition that could reasonably be expected to cause the pain alleged, neither requires objective proof of the pain itself." *Elam*, 921 F.2d at 1215. The Eleventh Circuit has held that "pain alone can be disabling, even when its existence is unsupported by objective evidence." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)); *Walker v. Bowen*, 826 F.2d 996, 1003 (11th Cir. 1987); *Hurley v. Barnhart*, 385 F. Supp. 2d 1245, 1259 (M.D. Fla. 2005). The presence or absence of evidence to support symptoms of the severity claimed, though, remains a factor that can be considered. *Marbury*, 957 F.2d at 839-40; *Tieniber v. Heckler,* 720 F.2d 1251, 1253 (11th Cir. 1983).

Finally, if the Commissioner refuses to credit subjective testimony of the plaintiff concerning pain, he must do so explicitly and give reasons for that decision. *MacGregor v. Bowen*, 786 F.2d 1050, 1054 (11th Cir. 1986). Where he fails to do so, the Eleventh Circuit has stated that it would hold as a matter of law that the testimony is accepted as true. *Holt*, 921 F.2d at 1223; *MacGregor*, 786 F.2d at 1054. Although the Eleventh Circuit does not require an explicit finding as to a claimant's

credibility, the implication must be obvious to the reviewing court. *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). "The credibility determination does not need to cite particular phrases or formulations but it cannot merely be a broad rejection which is not enough to enable the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." *Id.* (internal quotations and citations omitted). And of course, the reasons articulated for disregarding the plaintiff's subjective pain testimony must be based upon substantial evidence. *Wilson*, 284 F.3d at 1225-26; *Jones v. Dep't of Health and Human Servs.*, 941 F.2d 1529, 1532 (11th Cir. 1991); *Hurley*, 385 F. Supp. 2d at 1259.

Underlying the *Hand* standard is the need for a credibility determination concerning a plaintiff's complaints of pain. Those complaints are, after all, subjective. "[T]he ascertainment of the existence of an actual disability depend[s] on determining the truth and reliability of [a claimant's] complaints of subjective pain." *Scharlow v. Schweiker*, 655 F.2d 645, 649 (5th Cir. 1981) (holding that the ALJ must resolve "the crucial subsidiary fact of the truthfulness of subjective symptoms and complaints").[4] People with objectively identical conditions can experience significantly different levels of pain, and pain is more readily treated in some than in others. "Reasonable minds may differ as to whether objective medical impairments could reasonably be expected to produce [the claimed] pain. This determination is a question of fact which, like all factual findings by the [Commissioner], is subject only to limited review in the courts . . . ." *Hand v. Heckler*, 761 F.2d 1545, 1548-49

---

[4] Decisions of the United States Court of Appeals for the Fifth Circuit decided prior to September 30, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. Pritchard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).

(11th Cir. 1985). It is within the ALJ's "realm of judging" to determine whether "the quantum of pain [a claimant] allege[s] [is] credible when considered in the light of other evidence." *Arnold v. Heckler*, 732 F.2d 881, 884 (11th Cir. 1984). Thus, a physician may be told by a patient that he or she is in pain, and the physician may believe it, but the ALJ is not bound by that. The evidence as a whole, including the existence of corroborating objective proof or the lack thereof, and not just a physician's belief or the plaintiff's claims, is the basis for the ALJ's credibility determination.

Undoubtedly, plaintiff has a myriad of impairments. These include, as recognized by the ALJ, hypertension, back pain, history of right leg pain, history of asthma, history of left tibia fracture with knee pain, status post surgery of knee, alcoholism, schizoaffective disorder, post-traumatic stress disorder, major depressive disorder, and anti-social personality disorder. T. 18. Conceding that these conditions imposed restrictions upon plaintiff, the ALJ nonetheless found her complaints less than entirely credible. Based upon plaintiff's psychological limitations, the ALJ found she was limited to unskilled, entry-level work. If the ALJ has discounted plaintiff's subjective complaints, in a way supported by the record, this finding must stand.

Having closely reviewed the medical records in this case, I note that nothing in those records unfailingly supports a claim of disabling pain. Plaintiff had a history of leg injury, back pain and some medical disorders, such as hypertension and asthma. No objective evidence, however, has tied these ailments to the production of disabling pain. Plaintiff had, in disability reports, represented she had severe pain

"all day everyday." Yet at the hearing she described her pain as twice a week. T. 142. She claimed that on those two days she could only lay in bed. Again, nothing in the medical records supports a claim of such intense pain. *See Foote*, 67 F. 3d at 1560-1561, ("A claimant may establish that her pain is disabling through objective medical evidence that an underlying medical condition exists that could reasonably be expected to produce the pain.") Here, the ALJ questioned the intensity, persistence, and limiting effects of plaintiff's symptoms. The question is not simply whether plaintiff has medical conditions that could be expected to produce pain. Instead, the disability determination must include a quantitative assessment of the limiting effects of such pain. The ALJ engaged is this type of analysis.

A November, 2005 knee x-ray showed stabilizing hardware in place, with no evidence of acute hardware failure or refracture. T. 275. Plaintiff had good range of motion, as well as normal strength and reflexes. She could walk without difficulty. Consultant Dr. Naeem found a normal back with no spasm or tenderness. T. 352. Plaintiff argued to the Appeals Council that she had an August 2007 MRI showing cervical spondylosis, and the record confirms a 1999 study with such a finding. The Commissioner urges that no evidence of the 2007 MRI appears of record. It is not at all clear, in any event, how an abnormality in the neck would account for plaintiff's generalized complaints of pain[5], and plaintiff has not demonstrated that it does.

---

[5] Plaintiff points to no complaints of pain or limitation relating to the cervical spine. Her disability application notes, "I have back pain it is the low part of my back . . . ." T. 343. Plaintiff may well have evidence of spondylosis, but with respect to this claim, it is a red herring. *See "Cervical Spondylosis" Mayo Clinic*, http://www.mayoclinic.com/health/cervical-spondylosis/DS00697/DSECTION=symptoms (Collecting as symptoms stiff, painful neck; shoulder, arm or chest pain; tingling and pinprick

As the medical records note, and the ALJ observed, there is no abnormality of the back. The records confirm that plaintiff could walk and stand without difficulty during examinations. This is consistent with the absence of medical evidence showing plaintiff sought treatment consistent with her allegations of disabling pain. From November 1, 2005 until April 18, 2007, coinciding with the 14 or so months after she requested an administrative hearing, she eschewed all medical treatment. She did not so much as report to the CHD or the local emergency room. This was at a time just after Dr. Naeem had reported that the health department would be adequate to take care of her. Even when she did go to CHD, she often sought medication for her blood pressure and cholesterol, with only intermittent complaints of pain. T. 231-255. When she did go to the clinic after more than a year's absence, she complained of headaches, but said her back had improved with aspirin and Tylenol. She declined the recommended follow up after that April 2007 visit, returning only when she wanted assistance to complete a food stamp application.

Plaintiff's sporadic visits to the emergency room are equally inconclusive and are not supportive of a claim of constant disabling pain. In May 2007, she came in with a complaint of dental pain, but despite observation over a period of hours, made no complaint of back pain. T. 196. In June, she had "epigastric" pain, but made no mention of back pain. T. 191. In August of 2007, plaintiff reported "no" pain. T. 182.

---

sensations in arms, hands, legs, or feet; numbness and weakness in arms, hands, legs, or feet; lack of coordination; difficulty walking; abnormal reflexes; and loss of bladder or bowel control) (visited 8/22/2011).

I will also note, as did the ALJ, that plaintiff's complaints of financial inability to seek out, and continue, treatment are not entirely convincing. Plaintiff smoked from one-half to one pack of cigarettes a day. She testified she drank a quart of beer a day, and other records corroborate her consumption. As the ALJ stated, "It appears reasonable to conclude that if the claimant was serious about her health, she would divert the funds used for alcohol for medical treatment." T. 23. A conservative assessment of the cost of plaintiff's tobacco and alcohol use must be placed in the range of $180 to $220 a month, even using the quantities to which she admits. This is not a judgment as to lifestyle; it is merely another flaw in plaintiff's supposed sword of credibility, as properly assessed by the ALJ. The ALJ properly tempered his view of plaintiff's credibility, and I find no error in his doing so.

Plaintiff next argues that the ALJ failed to evaluate the effects and limitations imposed by her combination of severe impairments. "Where a disability claimant has alleged several severe impairments, the Secretary has a duty to consider the impairments in combination and to determine whether the combined impairments render the claimant disabled." *Jones v. Dep't of Health and Human Servs.*, 941 F. 2d at 1533; *see also Jones v. Bowen* 810 F. 2d 1001,1006 (11th Cir. 1986) ("It is now well settled that the ALJ must consider the combined effects of a claimant's impairments in determining whether he is disabled."). As applied by the Eleventh Circuit, this rule requires the ALJ to "consider every impairment alleged." *Gibson v. Heckler*, 779 F. 2d. 619, 623 (11th Cir. 1986). A statement by the ALJ that "'based upon a thorough consideration of all evidence, the ALJ concludes that [claimant] is not suffering from any impairment, *or a combination of impairments* of sufficient

severity to prevent him from engaging in any substantial gainful activity for a period of at least twelve continuous months[,]" will suffice to demonstrate that the ALJ "has considered the combination issue." *Wheeler v. Heckler*, 784 F. 2d 1073, 1077 (11th Cir. 1986). The ALJ maintains the duty to make "findings as to the effect of the combination of impairments and to decide whether the combined impairments cause the claimant to be disabled." *Bowen v. Heckler*, 748 F. 2d 629, 635 (11th Cir. 1984); *see also Walker v. Bowen*, 826 F. 2d 996 (11th Cir. 1987).

Here, the ALJ discussed in detail some of the individual impairments supported by the evidence. In particular, the ALJ made findings concerning back pain, knee pain, and high blood pressure. T. 22-23. Nevertheless, plaintiff argues the ALJ defaulted in his obligation to make findings regarding the combined effects of all severe impairments. Certainly, this analysis would be simpler had the ALJ availed himself of the finding approved in *Wheeler*, concerning the combination of impairments. This arguable shortcoming notwithstanding, plaintiff has not herself articulated exactly what she has in mind concerning the combined disabling effects of her impairments, and the same is not obvious to me. My inability to find any prejudice to plaintiff is strengthened by the ALJ's direct reference to plaintiff's "emotional problems" in his assessment of residual functional capacity. T. 20. At this stage the ALJ made a detailed finding concerning plaintiff's physical limitations, and went on to qualify that finding by noting that the psychological problems would limit plaintiff to "unskilled entry level work." T. 20. The ALJ went further, stating that although plaintiff's primary complaints concerned blood pressure and back pain, "she had other problems." T. 21. He then considered her history of leg fracture, her

asthma, her dizziness, and her depression. T. 21-22. Having found that plaintiff is not disabled by credible reports of pain, the ALJ imposed upon those findings his comments concerning "mental limitations." T. 23. He expressly considered the "physical and mental demands" of those jobs that could be accommodated by plaintiff's residual functional capacity. T. 24. Accordingly, I find no error in the ALJ's evaluation of the combination of plaintiff's severe impairments. *See Wilson v. Barnhart*, 284 F. 3d 1219, 1224-1225 (11th Cir. 2002) (reversing district court's finding that "ALJ did not discuss the cumulative effects of Plaintiff's impairments" where the statements of the ALJ "evidenced consideration of the combined effects of a claimant's impairments").

In plaintiff's last point, she argues the ALJ failed to pose a complete hypothetical question to the vocational expert. Plaintiff finds that the hypothetical did not include all of plaintiff's impairments. She relies upon *Jones v. Apfel*, 190 F. 3d 1224, 1229 (11th Cir. 1999) (requiring a hypothetical question "which comprises all of the claimant's impairments"). Plaintiff argues that by merely limiting her ability to "unskilled entry level work," the ALJ overlooked her multiple mental impairments. Her argument is not specific, but only mentions the presence of "multiple mental impairments." She does not bother to link these impairments to her claim that the hypothetical question, and the determined residual functional capacity, overlooked the spectrum of mental impairments.

The ALJ, however, did not err in assessing residual functional capacity (the basis for the hypotheticals), nor did he overlook those mental impairments that affected plaintiff's ability to work. Residual functional capacity is based on all of the

relevant evidence, including the objective medical evidence, the claimant's medical source opinions and any other evidence showing how the claimant's impairments and related symptoms affect her ability to work.  *See* 20 C.F.R. § 416.929(a).

The  ALJ did not overlook the opinions of the psychological experts.  Instead, as the Commissioner argues, the ALJ properly found that despite multiple mental impairments, plaintiff would be capable of performing simple, repetitive tasks on a sustained basis.  Dr. Conger, one of the psychologists relied upon by plaintiff, found a number of disorders, but also found, as did the ALJ, that plaintiff did not meet the criteria for a listed impairment.  T. 294.  As Dr. Conger noted, plaintiff "shows the mental ability to perform routine [activities of daily living] . . . . [S]he remains functional from a mental perspective. . . . She . . . displays an overall adequate Mental Status, with no indication of significant cognitive deficits. . . . She is also able to relate in a socially appropriate manner . . . ."  T. 295.  As argued by the Commissioner, Dr. Conger supported a conclusion that plaintiff could perform "simple, repetitive tasks on a sustained basis." T. 299.  She also has "adequate social skills and adaptation abilities."  T. 299.

Dr. Patrick Peterson, Ph.D., also evaluated mental status.  He found no restrictions in activities of daily living, mild difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence or pace, and no episodes of decompensation.  T. 335.  Dr. Peterson's Mental Functional Capacity Assessment is not helpful to plaintiff's argument.  This instrument concludes that plaintiff functions adequately and may be considered able to sustain the mental demands of "appropriate concentrated task-oriented activity."  The

findings of these consultants most certainly underlie the hypothetical inquiry made by the ALJ. Accordingly, the hypothetical question, with its assumed residual functional capacity, was faithful to the evidence, and plaintiff's claim to the contrary is without merit.

Based upon the foregoing analysis, the decision is in compliance with appropriate legal standards. *See Carnes*, 936 F.2d at 1218 ("[T]his Court may reverse the decision of the [Commissioner] only when convinced that it is not supported by substantial evidence or that proper legal standards were not applied."). It is therefore respectfully RECOMMENDED:

The application for a period of disability and disability benefits be DENIED and the Commissioner's decision be AFFIRMED.

At Pensacola, Florida, this 24th day of August, 2011.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.
UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Any objections to these proposed findings and recommendations must be filed within fourteen days after being served a copy hereof. Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control. A copy of any objections shall be served upon any other parties. Failure to object may limit the scope of appellate review of factual findings. *See* 28 U.S.C. § 636; *United States v. Roberts*, 858 F.2d 698, 701 (11th Cir. 1988).